**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| SHIRE DEVELOPMENT LLC, SHIRE PHARMACEUTICAL DEVELOPMENT INC., COSMO TECHNOLOGIES LIMITED, and GIULIANI INTERNATIONAL LIMITED, | ) | C.A. No. 1:12-cv-00904-AT |
| Plaintiffs, | ) | |
| v. | ) | |
| OSMOTICA KERESKEDELMI ÉS SZOLGÁLTATÓ KFT, OSMOTICA PHARMACEUTICAL CORP., and OSMOTICA PHARMACEUTICAL ARGENTINA S.A. | ) | |
| Defendants. | | |

## FIRST AMENDED COMPLAINT

Plaintiffs Shire Development LLC, Shire Pharmaceutical Development Inc. (collectively, "Shire"), Cosmo Technologies Limited ("Cosmo"), and Giuliani International Limited ("Giuliani") (collectively, "Plaintiffs") by their undersigned attorneys, acting within the time permitted by Fed. R. Civ. P. 15(a)(1)(B), for their Amended Complaint against defendants Osmotica Kereskedelmi és Szolgáltató Kft ("Osmotica Kft"), Osmotica Pharmaceutical Corp. ("Osmotica Pharmaceutical"),

6418377 v02

and Osmotica Pharmaceutical Argentina S.A. ("Osmotica Argentina") (collectively and/or individually, "Defendants") herein, allege as follows:

**NATURE OF THE ACTION**

1. This is a civil action for patent infringement arising under the patent laws of the United States, Title 35, United States Code, involving United States Patent No. 6,773,720 ("the '720 patent" or "the patent-in-suit") (attached as Exhibit A).

**THE PARTIES**

2. Plaintiff Shire Development LLC is a limited liability company organized and existing under the laws of the State of Delaware, having its principal place of business at 725 Chesterbrook Boulevard, Wayne, Pennsylvania 19087.

3. Plaintiff Shire Pharmaceutical Development Inc. is a corporation organized and existing under the laws of the State of Maryland, having its principal place of business at 1801 Research Boulevard, Rockville, Maryland 20850.

4. Plaintiff Cosmo is a company organized and existing under the laws of Ireland, having its principal place of business at 2, Duncairn Terrace, Bray Co., Wicklow, Ireland.

5. Plaintiff Giuliani is a company organized and existing under the laws of Ireland, having its principal place of business at 33 Sir John Rogerson's Quay,

Dublin 2, Ireland.

6. Plaintiffs discovered the existence of Osmotica Kft and Osmotica Argentina (which were not revealed in defendant Osmotica Pharmaceutical's letter addressed to Shire, Cosmo, and Philip A. DuBois and Benoit Castel of the law firm Young & Thompson, dated February 1, 2012, purportedly pursuant to 21 U.S.C. § 355(j)(2)(B)(ii) and § 505(j)(2)(B)(ii) of the Federal Food, Drug, and Cosmetic Act ("FDCA") (the "Osmotica Notice Letter")) by virtue of review of Abbreviated New Drug Application ("ANDA") No. 203043, which was produced after the initial filing of the Complaint against Osmotica Pharmaceutical. Plaintiffs then inquired of Defendants' counsel about the corporate relationship of the Defendants and their relationship to ANDA No. 203043, but have not received any information to date. Plaintiffs believe, based upon their current investigation, that the facts alleged about the Defendants in this Amended Complaint are true, but resort to the judicial process and the aid of discovery for further verification.

7. Upon information and belief, Osmotica Kft is a company organized and existing under the laws of Hungary and maintaining an office located at Tolgyfa u. 24. IV. ep. 10271 Budapest, Hungary. Upon information and belief, Osmotica Kft is engaged in the development and sale of pharmaceutical products throughout the world, including in the United States.

8. Upon information and belief, Osmotica Pharmaceutical is a company organized and existing under the laws of the State of Delaware and operating in the State of Georgia. Upon information and belief, Osmotica is registered to transact business in the State of Georgia and maintains an office at 895 Sawyer Road, Marietta, Georgia 30062. Upon information and belief, Corporation Service Company is the registered agent for Osmotica in the State of Georgia. Corporation Service Company is located at 40 Technology Parkway South, Norcross, Georgia 30092.

9. Upon information and belief, Osmotica Pharmaceutical is a wholly owned subsidiary of Osmotica Kft. Upon information and belief, Osmotica Pharmaceutical acts at the direction of, under the control of, and for the direct benefit of Osmotica Kft and is controlled and/or dominated by Osmotica Kft.

10. Upon information and belief, Osmotica Argentina is a public limited company organized and existing under the laws of Argentina and operating at its principal place of business, located at Francisco Acuña de Figueroa 821, (C1180AA0), Buenos Aires, Argentina. Upon information and belief, Osmotica Argentina is engaged in the development and manufacture of pharmaceutical products throughout the world, including in the United States.

11. Upon information and belief, Osmotica Kft owns 75% of Osmotica

Argentina's shares.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a). Venue is proper in this Court under 28 U.S.C. §§ 1391(c) and 1400(b).

13. This Court has personal jurisdiction over Osmotica Pharmaceutical. Osmotica Pharmaceutical has submitted to personal jurisdiction in this Court because, *inter alia*, it resides, and is doing business in, this judicial district.

14. Upon information and belief, Osmotica Kft is the applicant for ANDA No. 203043, filed with the U.S. Food and Drug Administration ("FDA"), seeking approval to engage in the commercial manufacture, use, sale, offer for sale and/or importation into the United States of generic mesalamine delayed release tablets, containing 1.2g of mesalamine as the active ingredient ("the Osmotica Product").

15. Upon information and belief, Osmotica Pharmaceutical submitted ANDA No. 203043 on behalf of Osmotica Kft. Upon information and belief, Osmotica Kft has authorized Osmotica Pharmaceutical to act as Osmotica Kft's agent with respect to, *inter alia*, regulatory correspondence concerning and the filing of ANDA No. 203043.

16. Upon information and belief, Osmotica Kft, Osmotica

Pharmaceutical, and Osmotica Argentina share a unity of interest and ownership with respect to, *inter alia*, the Osmotica Product and ANDA No. 203043. Upon information and belief, research and development of the Osmotica Product that is the subject of ANDA No. 203043 was conducted at Osmotica Argentina's facilities. Upon information and belief, Osmotica Kft, Osmotica Pharmaceutical, and Osmotica Argentina worked in concert to prepare ANDA No. 203043 for submission to FDA.

17. Upon information and belief, Osmotica Argentina operated as an instrumentality for the preparation and submission of ANDA No. 203043, which seeks approval to engage in the commercial manufacture, use, sale, offer for sale and/or importation into the United States of the Osmotica Product.

18. Upon information and belief, Osmotica Kft, Osmotica Pharmaceutical, and Osmotica Argentina operate in concert with each other and hold themselves out in the marketplace as one entity. Upon information and belief, Defendants maintain a shared website, http://www.osmotica.com (the "Osmotica website"), which states, under the heading "Our Company," that "Osmotica Pharmaceutical is a global pharmaceutical company specializing in drug delivery technologies and neurology based therapies." Under the same heading, the website further states, "Osmotica is an international group of companies with principal

operations located in the United States, Argentina and Osmotica Kft in Hungary."

19. Upon information and belief, Defendants share unity of interest and ownership over business relationships for the sale of pharmaceutical products in the United States. The Osmotica website lists Nifedipine Extended-release Tablets, Venlafaxine Extended Release Tablets, and Oxybutynin Chloride Extended-Release Tablets as such products sold in the United States.

20. Upon information and belief, Defendants derive substantial revenue from the sale of pharmaceutical products within this judicial district. Upon information and belief, Walgreen Co. sells Defendants' Venlafaxine Extended Release Tablets through a broad distribution network in this judicial district, with nine locations in Marietta, Georgia alone. Upon information and belief, CVS/pharmacy sells Defendants' Nifedipine Extended-release Tablets through a broad distribution network in this judicial district, with twelve locations in Marietta, Georgia alone.

21. Upon information and belief, Osmotica Pharmaceutical and Osmotica Argentina share certain officers and/or directors.

22. Upon information and belief, this Court has personal jurisdiction over Osmotica Kft. Upon information and belief, Osmotica Kft has submitted to personal jurisdiction in this Court because, *inter alia*, it resides and is doing

business within this judicial district through its agent, Osmotica Pharmaceutical.

23. Upon information and belief, by virtue of, *inter alia*, Osmotica Argentina's relationship with Osmotica Kft and/or Osmotica Pharmaceutical in connection with the preparation and/or filing of ANDA No. 203043, this Court has personal jurisdiction over Osmotica Argentina.

**<u>FACTS AS TO ALL COUNTS</u>**

24. Shire Development LLC is the owner of New Drug Application ("NDA") No. 22-000, approved by FDA for the manufacture and sale of mesalamine delayed release tablets, containing 1.2g mesalamine, which are commercialized under the name of Lialda®. Lialda® is indicated for the induction of remission in adults with active, mild to moderate ulcerative colitis and for the maintenance of remission of ulcerative colitis.

25. Pursuant to 21 U.S.C. § 355(b)(1), the patent-in-suit is listed in the FDA's publication titled "Approved Drug Products with Therapeutic Equivalence Evaluations" (commonly known as the "*Orange Book*") as covering Lialda®.

26. Upon information and belief, Defendants prepared and submitted the Osmotica ANDA to FDA under § 505(j) of the FDCA (codified at 21 U.S.C. § 355(j)) seeking approval to engage in the commercial manufacture, use, sale, offer for sale and/or importation into the United States of the Osmotica Product and

included a "paragraph IV" certification seeking approval before patent expiration.

27. 21 U.S.C. § 355(j)(2)(B)(iv)(II) requires that a letter notifying a patent holder of the filing of an ANDA containing a paragraph IV certification "include a detailed statement of the factual and legal basis of the opinion of the applicant that the patent is invalid or will not be infringed." Likewise, 21 C.F.R. § 314.95(c)(6) requires that such a letter include "[a] detailed statement of the factual and legal basis of applicant's opinion that the patent is not valid, unenforceable, or will not be infringed." The detailed statement is to include "(i) [f]or each claim of a patent alleged not to be infringed, a full and detailed explanation of why the claim is not infringed" and "(ii) [f]or each claim of a patent alleged to be invalid or unenforceable, a full and detailed explanation of the grounds supporting the allegation." 21 C.F.R. §§ 314.95(c)(6)(i)-(ii).

28. Osmotica Pharmaceutical sent letters addressed to Shire Development, Inc. (now Shire Development LLC), Shire Pharmaceutical Development, Inc., Cosmo Technologies Limited, and Philip A. DuBois and Benoit Castel of the law firm Young & Thompson, each dated February 1, 2012, purportedly pursuant to 21 U.S.C. § 355(j)(2)(B)(ii) and § 505(j)(2)(B)(ii) of the FDCA regarding the Osmotica Product ("the Osmotica Notice Letter").

29. The Osmotica Notice Letter provides insufficient basis for the

determination of any alleged non-infringement and/or invalidity of the '720 patent. Specifically, it does not provide "[a] detailed statement of the factual and legal basis of applicant's opinion that the patent is not valid, unenforceable, or will not be infringed," as required under 21 C.F.R. § 314.95(c)(6).

30. The Osmotica Notice Letter includes an attachment titled "Offer of Confidential Access to Application No. 203043 Pursuant to 21 U.S.C. § 355(j)(5)(C)(i)(III)" ("the Offer of Confidential Access"). Plaintiffs' counsel contacted Osmotica Pharmaceutical, objecting to certain provisions of the Offer of Confidential Access as unreasonable and requesting, *inter alia*, confidential access to the Osmotica ANDA in its entirety. Prior to the date Plaintiffs filed their Complaint, Osmotica Pharmaceutical did not grant such access.

31. Plaintiffs believe that infringement of valid patent claims exist, but must resort to the judicial process to fully assess Osmotica Pharmaceutical's potential defenses to Plaintiffs' claims, in light of Osmotica Pharmaceutical's denial of confidential access to the Osmotica ANDA in its entirety and the extremely limited information provided in the Osmotica Notice Letter. *See, e.g.*, 21 U.S.C. § 355(j)(2)(B)(iv)(II); 21 C.F.R. § 314.95(c)(6).

**FIRST COUNT**
(Infringement of the '720 Patent by Defendants)

32. Plaintiffs repeat and re-allege each of foregoing paragraphs as if fully

set forth herein.

33. The ’720 patent, titled “Mesalazine Controlled Release Oral Pharmaceutical Compositions,” was duly and legally issued by the United States Patent and Trademark Office on August 10, 2004 to Roberto Villa, Massimo Pedrani, Mauro Ajani, and Lorenzo Fossati, who assigned the ’720 patent to Cosmo S.p.A. Cosmo S.p.A. granted Giuliani S.p.A. an exclusive license for the ’720 patent. Giuliani S.p.A., in turn, granted Shire Pharmaceutical Development Inc. an exclusive sublicense for the ’720 patent. Subsequently, Giuliani S.p.A. assigned the license agreement with Shire Pharmaceutical Development Inc. to Giuliani, and Cosmo became the owner of the ’720 patent on assignment from Cosmo S.p.A.

34. Upon information and belief, Defendants seek FDA approval for the manufacture and/or distribution of the Osmotica Product.

35. Upon information and belief, the Osmotica ANDA includes a paragraph IV certification to the ’720 patent to obtain approval to engage in the commercial manufacture, use, sale, offer for sale and/or importation into the United States of the Osmotica Product before the expiration of the ’720 patent.

36. Upon information and belief, Defendants will commercially manufacture, sell, offer for sale, and/or import into the United States the Osmotica

Product immediately upon FDA approval.

37. Upon information and belief, as of the date of the Osmotica Notice Letter, Defendants were aware of the statutory provisions and regulations set forth in 21 U.S.C. § 355(j)(2)(B)(iv)(II) and 21 C.F.R. § 314.95(c)(6).

38. The submission and filing of ANDA No. 203043 with a paragraph IV certification to the ’720 patent for the purpose of obtaining approval to engage in the commercial manufacture, use, sale, offer for sale and/or importation into the United States of the Osmotica Product before the expiration of the ’720 patent is an act of infringement by Defendants of one or more claims of the ’720 patent under 35 U.S.C. § 271(e)(2)(A).

39. Upon information and belief, the commercial manufacture, use, sale, offer for sale and/or importation into the United States of the Osmotica Product that is the subject of ANDA No. 203043 will infringe one or more claims of the ’720 patent under 35 U.S.C. § 271.

40. Upon information and belief, the sale or offer for sale of the Osmotica Product by Defendants would induce and/or contribute to third-party infringement of one or more claims of the ’720 patent under 35 U.S.C. § 271.

41. Upon information and belief, as of the date of the Osmotica Notice Letter, Defendants were aware of the existence of the ’720 patent and acted

without a reasonable basis for believing that they would not be liable for infringement of the ’720 patent, thus rendering this case “exceptional” under 35 U.S.C. § 285.

42. The acts of infringement set forth above will cause Plaintiffs irreparable harm for which none has an adequate remedy at law, unless Defendants are preliminarily and permanently enjoined by this Court.

**SECOND COUNT**
(Induced and/or Contributory Infringement
of the ’720 Patent by Osmotica Kft)

43. Plaintiffs repeat and re-allege each of the foregoing paragraphs as if fully set forth herein.

44. Osmotica Kft is jointly and severally liable for Osmotica Pharmaceutical’s and/or Osmotica Argentina’s infringement of one or more claims of the ’720 patent.

45. Upon information and belief, Osmotica Kft knowingly induced Osmotica Pharmaceutical and/or Osmotica Argentina to infringe and/or contributed to Osmotica Pharmaceutical’s and/or Osmotica Argentina’s infringement of one or more claims of the ’720 patent.

46. Upon information and belief, Osmotica Kft actively induced, encouraged, aided, or abetted Osmotica Pharmaceutical’s and/or Osmotica

Argentina's preparation and submission and filing of ANDA No. 91-640 with a paragraph IV certification to the '720 patent.

47. Osmotica Kft's inducement, encouragement, aiding, or abetting of Osmotica Pharmaceutical's and/or Osmotica Argentina's preparation, submission, and filing of ANDA No. 203043 with a paragraph IV certification constitutes infringement of the '720 patent under 35 U.S.C. § 271(e)(2)(A). Further, Osmotica Kft's commercial use, sale, offer for sale and/or importation into the United States of the Osmotica Product would induce and/or contribute to Osmotica Pharmaceutical's and/or Osmotica Argentina's infringement of the '720 patent under 35 U.S.C. § 271(b) and/or 35 U.S.C. § 271(c).

48. Upon information and belief, Osmotica Kft's inducement, encouragement, aiding, and/or abetting of the sale or offer for sale of the Osmotica Product by Osmotica Pharmaceutical and/or Osmotica Argentina would induce and/or contribute to third-party infringement of one or more claims of the '720 patent under 35 U.S.C. § 271.

49. Upon information and belief, Osmotica Kft has, continues to, and will actively induce, encourage, aid, or abet Osmotica Pharmaceutical's and/or Osmotica Argentina's infringement of the '720 patent with knowledge that it is in contravention of the rights of Plaintiffs.

50. Upon information and belief, as of the date of the Osmotica Notice Letter, Osmotica Kft was aware of the existence of the '720 patent and acted without a reasonable basis for believing that it would not be liable for inducing and/or contributing to Osmotica Pharmaceutical's and/or Osmotica Argentina's infringement of the '720 patent, thus rendering this case "exceptional" under 35 U.S.C. § 285.

51. The acts of infringement set forth above will cause Plaintiffs irreparable harm for which none has an adequate remedy at law, unless Osmotica Kft is preliminarily and permanently enjoined by this Court.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request the following relief:

(a) A judgment declaring that the '720 patent is valid and enforceable;

(b) A judgment declaring that, pursuant to 35 U.S.C. § 271(e)(2)(A), the submission and filing of ANDA No. 203043 with a paragraph IV certification to the FDA to obtain approval for the commercial manufacture, use, sale, offer for sale and/or importation into the United States of the products that are the subject of ANDA No. 203043 prior to the expiration of the '720 patent was an act of infringement of the '720 patent by Defendants, individually and collectively;

(c) A judgment declaring that, pursuant to 35 U.S.C. § 271(e)(2)(A)

and/or 35 U.S.C. § 271(a), the commercial manufacture, use, sale, offer for sale and/or importation into the United States of the products that are the subject of ANDA No. 203043 prior to the expiration of the ’720 patent will constitute an act of infringement of the ’720 patent by Defendants, individually and collectively;

(d) A judgment declaring that, pursuant to 35 U.S.C. § 271(e)(2)(A), Osmotica Kft has and continues to induce and/or contribute to Osmotica Pharmaceutical’s and/or Osmotica Argentina’s infringement of the ’720 patent based on the submission to the FDA of ANDA No. 203043 with a paragraph IV certification to obtain approval for the commercial manufacture, use, sale, offer for sale and/or importation into the United States of the products that are the subject of ANDA No. 203043 prior to the expiration of the ’720 patent;

(e) A judgment declaring that, pursuant to 35 U.S.C. § 271(b) and/or 35 U.S.C. § 271(c), Osmotica Kft would induce and/or contribute to Osmotica Pharmaceutical’s and/or Osmotica Argentina’s infringement of the ’720 patent based on the commercial manufacture, use, sale, offer for sale and/or importation into the United States of the products that are the subject of ANDA No. 203043 prior to expiration of the ’720 patent;

(f) A judgment declaring that, pursuant to 35 U.S.C. § 271(b) and/or 35 U.S.C. § 271(c), the commercial manufacture, use, sale, offer for sale and/or

importation into the United States of the products that are the subject of ANDA No. 203043 by Defendants would induce and/or contribute to third-party infringement of the ’720 patent;

(g) A judgment declaring that, pursuant to 35 U.S.C. § 271(b) and/or 35 U.S.C. § 271(c), Osmotica Kft’s inducement, encouragement, aiding, or abetting of Osmotica Pharmaceutical’s and/or Osmotica Argentina’s commercial manufacture, use, sale, offer for sale and/or importation into the United States of the products that are the subject of ANDA No. 203043 would induce and/or contribute to third-party infringement of the ’720 patent;

(h) An order that, pursuant to 35 U.S.C. § 271(e)(4)(A), the effective date of any approval of the product that is the subject of ANDA No. 203043 shall be no earlier than the date on which the ’720 patent expires;

(i) A judgment pursuant to 35 U.S.C. § 271(e)(4)(B) preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees and attorneys, and those persons in active concert or participation or privity with them or any of them, from engaging in the commercial manufacture, use, sale, offer to sale and/or importation into the United States of the products that are the subject of ANDA No. 203043 until the expiration of the ’720 patent;

(j) A judgment awarding Shire damages or other monetary relief,

pursuant to 35 U.S.C. §§ 271(e)(4)(C) and 284, if Defendants commercially manufacture, use, sell, offer to sell and/or import into the United States any products that are the subject of ANDA No. 203043 prior to the expiration of the ’720 patent;

(k) A judgment declaring that Defendants’ infringement of the ’720 patent based on ANDA No. 203043 is willful if Defendants commercially manufacture, use, sell, offer to sell and/or import into the United States any products that are the subject of ANDA No. 203043 prior to the expiration of the ’720 patent;

(l) A judgment declaring that, pursuant to 35 U.S.C. § 285, this is an exceptional case and awarding Shire its attorneys’ fees and costs;

(m) Such other and further relief as this Court may deem just and proper.

Respectfully submitted, this 15th day of May, 2012.

/s/ David A. Rabin
David A. Rabin
Georgia Bar No. 591469
Jason Eakes
Georgia Bar No. 237048
Morris Manning & Martin, LLP
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, GA 30326-1044
(404) 233-7000 (telephone)
(404) 365-9532 (facsimile)
drabin@mmmlaw.com
jeakes@mmmlaw.com

Edgar H. Haug*
Jason A. Lief*
Mark P. Walters*
Andrew Wasson*
Elizabeth Murphy*
Frommer Lawrence & Haug LLP*
745 Fifth Avenue*
New York, New York 10151*
(212) 588-0800*

*Attorneys for Plaintiffs*

**Admitted pro hac vice*

Case 1:12-cv- )04-AT Docume

US006773720B1

(12) **United States Patent**
Villa et al.

(10) **Patent No.: US 6,773,720 B1**
(45) **Date of Patent: Aug. 10, 2004**

(54) **MESALAZINE CONTROLLED RELEASE ORAL PHARMACEUTICAL COMPOSITIONS**

(75) Inventors: **Roberto Villa**, Panama (PA); **Massimo Pedrani**, Panama (PA); **Mauro Ajani**, Panama (PA); **Lorenzo Fossati**, Panama (PA)

(73) Assignee: **Cosmo S.p.A.**, Milan (IT)

(*) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **10/009,491**

(22) PCT Filed: **Jun. 8, 2000**

(86) PCT No.: **PCT/EP00/05321**

§ 371 (c)(1), (2), (4) Date: **Dec. 13, 2001**

(87) PCT Pub. No.: **WO00/76481**

PCT Pub. Date: **Dec. 21, 2000**

(30) **Foreign Application Priority Data**

Jun. 14, 1999 (IT) ........................................ MI99A1316

(51) **Int. Cl.**[7] ......................... **A61K 9/127**; A61K 9/14; A61K 9/22; A61K 9/26; A61K 9/52

(52) **U.S. Cl.** ....................... **424/450**; 424/451; 424/452; 424/457; 424/464; 424/465; 424/468; 424/469; 424/484; 424/485; 424/488

(58) **Field of Search** ................................ 424/451, 452, 424/457, 464, 465, 467, 468, 469, 484, 485, 488, 450, 489, 490

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 4,921,757 A | * | 5/1990 | Wheatley et al. | 428/402.2 |
| 5,593,690 A | | 1/1997 | Akiyama et al. | 424/457 |
| 5,851,555 A | | 12/1998 | Sanghvi et al. | 424/464 |
| 5,911,980 A | * | 6/1999 | Samour et al. | 424/70.17 |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| GB | 2 245 492 A | 1/1992 |
| WO | WO 98/26767 | 6/1998 |

* cited by examiner

*Primary Examiner*—Thurman K. Page
*Assistant Examiner*—S. Tran
(74) *Attorney, Agent, or Firm*—Young & Thompson

(57) **ABSTRACT**

Controlled-release oral pharmaceutical compositions containing as active ingredient 5-amino-salicylic acid, comprising: a) an inner lipophilic matrix consisting of substances with a melting point below 90° C. in which the active ingredient is at least partly inglobated; b) an outer hydrophilic matrix in which the lipophilic matrix is dispersed; c) optionally other excipients.

**4 Claims, No Drawings**

## MESALAZINE CONTROLLED RELEASE ORAL PHARMACEUTICAL COMPOSITIONS

The present invention relates to controlled release oral pharmaceutical compositions containing as active ingredient 5-amino salicylic acid, also named mesalazine.

### BACKGROUND OF THE INVENTION

Mesalazine is used in the treatment of Chron's disease and ulcerative colitis thanks to its antiinflammatory activity on the intestinal mucuses. Controlled-release formulations of mesalazine are disclosed in WO 95/16451, EP 0 453 001, EP 0 377 477.

The preparation of a sustained, controlled, delayed or anyhow modified release form can be carried out according to different known techniques:

1. The use of inert matrices, in which the main component of the matrix structure opposes some resistance to the penetration of the solvent due to the poor affinity towards aqueous fluids; such property being known as lipophilia.
2. The use of hydrophilic matrices, in which the main component of the matrix structure opposes high resistance to the progress of the solvent, in that the presence of strongly hydrophilic groups in its chains, mainly branched, remarkably increases viscosity inside the hydrated layer.
3. The use of bioerodible matrices, which are capable of being degraded by the enzymes of some biological compartment.

All the procedures listed above suffer, however, from drawbacks and imperfections.

Inert matrices, for example, generally entail non-linear, but esponential, release of the active ingredient.

Hydrophilic matrices have a linear behaviour until a certain fraction of active ingredient has been released, then they significantly deviate from linear release.

Bioerodible matrices are ideal to carry out the so-called "site-release", but they involve the problem of finding the suitable enzyme or reactive to degradation. Furthermore, they frequently release in situ metabolites that are not wholly toxicologically inert.

A number of formulations based on inert lipophilic matrices have been described: Drug Dev. Ind. Pharm. 13 (6), 1001–1022, (1987) discloses a process making use of varying amounts of colloidal silica as a porization element for a lipophilic inert matrix in which the active ingredient is incorporated.

The same notion of canalization of an inert matrix is described in U.S. Pat. No. 4,608,248 in which a small amount of a hydrophilic polymer is mixed with the substances forming an inert matrix, in a non sequential compenetration of different matrix materials.

EP 375,063 discloses a technique for the preparation of multiparticulate granules for the controlled-release of the active ingredient which comprises co-dissolution of polymers or suitable substances to form a inert matrix with the active ingredient and the subsequent deposition of said solution on an inert carrier which acts as the core of the device. Alternatively, the inert carrier is kneaded with the solution containing the inert polymer and the active ingredient, then the organic solvent used for the their dissolution is evaporated off to obtain a solid residue. The resulting structure is a "reservoir", i.e. is not macroscopically homogeneous along all the symmetry axis of the final form.

The same "reservoir" structure is also described in Chem. Pharm. Bull. 46 (3), 531–533, (1998) which improves the



application through an annealing technique of the inert polymer layer which is deposited on the surface of the pellets.

To the "reservoir" structure also belong the products obtained according to the technique described in WO 93/00889 which discloses a process for the preparation of pellets in hydrophilic matrix which comprises:

- dissolution of the active ingredient with gastro-resistant hydrophilic polymers in organic solvents;
- drying of said suspension;
- subsequent kneading and formulation of the pellets in a hydrophilic or lipophilic matrix without distinction of effectiveness between the two types of application.

EP 0 453 001 discloses a multiparticulate with "reservoir" structure inserted in a hydrophilic matrix. The basic multiparticulate utilizes two coating membranes to decrease the release rate of the active ingredient, a pH-dependent membrane with the purpose of gastric protection and a pH-independent methacrylic membrane with the purpose of slowing down the penetration of the aqueous fluid.

WO 95/16451 discloses a composition only formed by a hydrophilic matrix coated with a gastro-resistant film for controlling the dissolution rate of mesalazine.

When preparing sustained-, controlled-release dosage forms of a medicament topically active in the gastrointestinal tract, it is important to ensure a controlled release from the first phases following administration, i.e. when the inert matrices have the maximum release rate inside the logarithmic phase, namely the higher deviation from linear release.

Said object has been attained by the present invention, which also allows to prepare compositions characterized by a high content in active ingredient.

### DISCLOSURE OF THE INVENTION

The invention provides controlled release oral pharmaceutical compositions containing 5-amino-salicylic acid as the active ingredient, comprising:

a) an inner lipophilic matrix consisting of substances with melting point below 90° C. in which the active ingredient is at least partially inglobated;
b) an outer hydrophilic matrix in which the lipophilic matrix is dispersed;
c) optionally other excipients.

### DETAILED DISCLOSE OF THE INVENTION

The compositions of the invention can be obtained with a method comprising the following steps:

a) the active ingredient is first inglobated in a low melting excipient or mixture of excipients, while heating to soften and/or melt the excipient itself, which thereby incorporates the active ingredient by simple dispersion.

After cooling at room temperature an inert matrix forms, which can be reduced in size to obtain matrix granules containing the active ingredient particles.

b) the inert matrix granules are subsequently mixed together with one or more hydrophilic water-swellable excipients.

This way, when the tablet is contacted with biological fluids, a high viscosity swollen layer is formed, which coordinates the solvent molecules and acts as a barrier to penetration of the aqueous fluid itself inside the new structure. Said barrier antagonizes the starting "burst effect" caused by the dissolution of the medicament inglobated inside the inert matrix, which is in its turn inside the hydrophilic matrix.

The lipophilic matrix consists of substances selected from unsaturated and/or hydrogenated fatty acids, salts, esters or amides thereof, fatty acids mono-, di- or triglycerids, waxes, ceramides, cholesterol derivatives or mixtures thereof having melting point within the range of 40 to 90° C.

If desired, a fatty acid calcium salt may be incorporated. in the lipophilic matrix which is subsequently dispersed in a hydrophilic matrix prepared with alginic acid, thus remarkably increasing the hydrophilic matrix viscosity following penetration of the solvent front until contact with the lipophilic matrix granules dispersed inside.

The weight content of the active ingredient in the lipophilic matrix usually ranges from 5 to 95%.

The inert lipophilic matrix is reduced into granules by an extrusion and/or granulation process, or any other known processes which retain the homogeneous dispersion and matrix structure of the starting mixture.

The hydrophilic matrix consists of excipients known as hydrogels, i.e. substances which pass from the dry state to the hydrated one, undergo the so-called "molecular relaxation", namely a remarkable increase in mass and weight following the coordination of a large number of water molecules by the polar groups present in the polymeric chains of the excipients themselves.

Examples of hydrogels which can be used according to the invention are compounds selected from polymers or copolymers of acrylic or methacrylic acid, alkylvinyl polymers, hydroxyalkyl celluloses, carboxyalkyl celluloses, polysaccharides, dextrins, pectins, starches and derivatives, natural or synthetic gums, alginic acid.

The lipophilic matrix granules containing the active ingredient are mixed the with hydrophilic compounds cited above in a weight ratio typically ranging from 100:0.5 to 100:20 (lipophilic matrix: hydrophilic matrix). Part of mesalazine can optionally be mixed with hydrophilic substances to provide compositions in which the active ingredient is dispersed both in the lipophilic and the hydrophilic matrix, said comoositions being preferably in the form of tablets, capsules and/or minitablets.

The compression of the mixture of lipophilic matrix, hydrogel-forming compounds and, optionally, active ingredient non inglobated in the lipophilic matrix, yields a macroscopically homogeneous structure in all its volume, namely a matrix containing a dispersion of the lipophilic granules in a hydrophilic matrix.

The tablets, capsules and/or minitablets obtainable according to the invention can optionally be subjected to known coating processes with a gastro-resistant film, consisting of for example polymers of methacrylic acids (Eudragit$^{(R)}$) or cellulose derivatives, such as cellulose acetophthalate.

The compositions of the invention can contain a high percentage of active ingredient compared with the total composition weight up to 95%, an advantageous characteristic in the case of mesalazine which requires rather high unitary doses.

In terms of dissolution characteristics, the compositions of the invention provide a release profile of the active ingredient more homogeneous than the traditional systems. In fact, the immediate penetration of water inside the superficial layer of the hydrophilic matrix and the consequent swelling due to the distension of the polymeric chains of the hydrogels, gives rise to a high viscosity hydrated front which prevents the further penetration of water, linearly slowing down the dissolution process to a well determined point which can be located at about half the thickness until the further penetration of water would cause the disintegration of the hydrophilic layer and therefore the release of the content which, consisting of lipophilic granules, however induces the diffusional mechanism typical of these structures and therefore further slows down the dissolution profile of the active ingredient.

The following examples illustrate the invention in greater detail.

## EXAMPLE 1

770 g of 5-aminosalicylic acid are added in a kneader with 20 g of carnauba wax and 50 g of stearic acid with heating until homogeneous dispersion, then extruded into small granules while cold.

The inert matrix granules are loaded into a mixer in which 30 g of Carbopol 971P$^{(R)}$ and 65 g of hydroxypropyl methylcellulose are sequentially added.

After a first mixing step for homogeneously dispersing the powders, 60 g of microcrystalline cellulose and 5 g of magnesium stearate are added. After mixing, the final mixture is tabletted to unitary weight of 649 mg/tablet or 510 mg/tablet to obtain 500 and 400 mg dosages, respectively.

The resulting tablets are film-coated with cellulose acetophthalate or polymethacrylates and a plasticizer to provide gastric resistance and prevent the early release of product in the stomach.

The dissolution profile of these tablets shows the release of an active ingredient amount lower than 30% within the first hour of permanence in simulated enteric juice, an amount lower than 60% at the fourth hour and an amount lower than 90% at the eighth hour, thus proving that the double matrix effectively controls dissolution.

## EXAMPLE 2

1000 g of 5-aminosalicylic acid are added in a kneader with 10 g of carnauba wax and 20 g of stearic acid with heating until homogeneous dispersion, then extruded into small granules while cold or directly granulated in a high rate mixer.

The resulting granules are loaded into a mixer in which 80 g of hydroxypropyl methylcellulose and 12 g of sodium starch glycolate are sequentially added. After a first mixing step, 11 g of silica colloidal and 11 g of magnesium stearate are added. The final mixture is homogenized, then tabletted to a unitary weight of 1144 mg/tablet.

The resulting tablets are then film coated with polymethacrylates or cellulose acetophthalate and plasticizers to provide gastric resistance.

The dissolution profile of these tablets after a lag time of permanence in the stomach and partly in the intestine provides the release of no more than 30% within the first hour, no more than 55% within two hours, no more than 70% within four hours, no more than 90% within eight hours.

## EXAMPLE 3

850 g of 5-aminosalicylic acid are added in granulator/kneader with 9 g of beeswax and 22 g of palmitic acid with heating, until homogeneous dispersion; then worked to a granulate in a high shear granulating device. The resulting granules are then loaded into a mixer which is added in succession with 45.5 g of hydroxypropyl methylcellulose, 45.5 g of microcrystalline cellulose, 20 g of sodium starch glycolate, 22 g of colloidal silica and 22 g of magnesium stearate. After homogenization, the final mixture is tabletted to a unitary weight of 975 mg/tablet.

The resulting tablets are then film coated with polymethacrylates or acetophthalate of cellulose and plasticizers to provide gastric resistance.

The dissolution profile of these tablets after a lag time of permanence in the stomach and partly in the intestine provides the release of no more than 30% within the first hour, no more than 50% within two hours, no more than 70% within four hours, no more than 90% within eight hours.

EXAMPLE 4

1100 g of 5-aminosalicylic acid are added in granulator/kneader with 10 g of wax carnauba and 20 g of stearic acid.

10 g of polyacrylamide, 39.5 of microcrystalline cellulose and 22 g of colloidal silica are separately loaded into the homogenizer/granulator to obtain a homogeneous solid mixture, which is placed in the mixer where the active ingredient has been granulated and homogenized. 49.5 g of hydroxypropyl methylcellulose and 12 g of sodium alginate are thoroughly mixed, then added with 5 g of calcium carbonate, 34.5 g of microcrystalline cellulose and 11 g of magnesium stearate. The mixture is homogenized, then tabletted to a final unitary weight of 1194 mg/tablet. The resulting tablets are then film-coated with polymethacrylates or cellulose acetophthalate and plasticizers to provide gastric resistance.

The dissolution profile of these tablets after a lag time of permanence in the stomach and partly in the intestine provides the release of no more than 35% within the first hour, no more than 50% within two hours, no more than 70% within four hours, no more than 90% within eight hours.

EXAMPLE 5

1200 g of 5-aminosalicylic acid are added in mixer with 10 g of carnauba wax and 20 g of stearic acid, with heating until homogeneous dispersion, then cold extruded into small granules or directly granulated in the high rate mixer. The resulting granules are loaded into a mixer, then 70 g of hydroxypropyl methylcellulose and 20 g of sodium starch glycolate are sequentially added.

After a first mixing step, 80 g of sodium carbonate and 5 g of magnesium stearate are added. The final mixture is homogenized, then tabletted to unitary weight of 1375 mg/tablet.

The resulting tablets are then film-coated with polymethacrylates or cellulose acetophthalate and plasticizers to provide gastric resistance.

The dissolution profile of these tablets after a lag time of permanence in the stomach and partly in the intestine provides the release of no more than 30% within the first hour, no more than 50% within two hours, no more than 70% within four hours, no more than 90% within eight hours.

What is claimed is:

1. Controlled-release oral pharmaceutical compositions containing as an active ingredient 5-amino-salicylic acid, comprising:

a) an inner lipophilic matrix consisting of substances selected from the group consisting of unsaturated and/or hydrogenated fatty acid, salts, esters or amides thereof, fatty acid mono-, di- or triglycerids, waxes, ceramides, and cholesterol derivatives with melting points below 90° C., and wherein the active ingredient is dispersed both in said the lipophilic matrix and in the hydrophilic matrix;

b) an outer hydrophilic matrix wherein the lipophilic matrix is dispersed, and said outer hydrophilic matrix consists of compounds selected from the group consisting of polymers or copolymers of acrylic or methacrylic acid, alkylvinyl polymers, hydroxyalkyl celluloses, carboxyalkyl celluloses, polysaccharides, dextrins, pectins, starches and derivatives, alginic acid, and natural or synthetic gums;

c) optionally other excipients;

wherein the active ingredient is present in an amount of 80 to 95% by weight of the total composition, and wherein the active ingredient is dispersed both in the lipophilic matrix and in the hydrophilic matrix.

2. Compositions as claimed in claim 1, wherein 5-aminosalicylic acid is dispersed in a molten lipophilic matrix by kneading, extrusion and/or granulation.

3. Compositions as claimed in claim 1, in the form of tablets, capsules, mintablets.

4. A process for the preparation of the compositions of claim 1, which comprises:

a) melt granulation of at least one portion of the active ingredient with the lipophilic excipients with melting point lower than 90° C.;

b) mixing the granules from step a) with the hydrophilic excipients and subsequent tabletting or compression.

* * * * *

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| SHIRE DEVELOPMENT LLC, SHIRE PHARMACEUTICAL DEVELOPMENT INC., COSMO TECHNOLOGIES LIMITED, and GIULIANI INTERNATIONAL LIMITED, Plaintiffs, | ) | Civil Action File No. 1:12-cv-00904-AT |
| v. | ) | |
| OSMOTICA PHARMACEUTICAL CORP., Defendant. | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on May 15, 2012, a true and correct copy of the foregoing document was filed electronically in the United States District Court for the Northern District of Georgia using the CM/ECF system, which will automatically send e-mail notification of such filings to counsel of record.

/s/ David A. Rabin
David A. Rabin



6418377 v02